IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) 1:12cr361 (LMB) |
| | ) 1:13cv1584 (LMB) |
| JAWAN RONELL HALTON, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION

Before the Court is Jawan Ronell Halton's ("Halton" or "movant") pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody ("Motion to Vacate"), in which he argues that he received constitutionally ineffective assistance of counsel in connection with his sentencing. Specifically, Halton alleges that counsel failed to object to a two-point increase to the total offense level for constructive possession of a firearm and similarly failed to object to the filing of an information under 21 U.S.C. § 851. He further alleges that counsel failed to object to the inclusion of a February 2003 drug possession conviction in his criminal history on the grounds that the conviction was more than ten years old. Lastly, he argues that he should not have been considered a career offender under the Armed Career Criminal Act ("ACCA"). Because Halton's Motion to Vacate lacks

merit on its face, it will be summarily dismissed without a response from the government or an evidentiary hearing.[1]

## I. FACTUAL BACKGROUND

On May 18, 2012, Prince William County detectives called Cody Jones, a person from whom an undercover officer had been buying crack cocaine, to order $200 worth of the drug. Jones responded by telling the detectives to meet him at a McDonald's restaurant in Manassas, Virginia. When detectives arrived, Jones said he was waiting for his supplier. Detectives saw a blue-green Dodge Charger with dark-tinted windows pull up into an adjacent parking lot and watched as a white male, later identified as Benjamin Lacovey ("Lacovey"), exited the vehicle, approached Jones, and handed him a plastic bag. Jones immediately returned to the undercover car and handed over the plastic bag, which appeared to contain crack cocaine.

Law enforcement officers began to follow the Dodge Charger along Route 234, seeing it stop several times and observing Lacovey make what looked like additional hand-to-hand drug transactions. At 11:30 p.m., officers initiated a traffic stop

---

[1] Under Rule 4(b) of the Rules Governing Section 2255 Proceedings,

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.

2

of the Dodge Charger. Halton was behind the wheel, Lacovey was in the back, and Halton's co-defendant, Darryl Jarod Magwood ("Magwood"), was in the right front passenger seat. As the Dodge Charger was being stopped, police noticed Magwood bend down as if placing something under his seat. After Magwood was told to exit the car, he attempted to flee, running into oncoming traffic. Officers chased after him. Once Magwood was wrestled to the ground, he continued to resist being handcuffed, trying to keep his hands under his body by his waist. When he was finally subdued, handcuffed, and rolled over, officers found a plastic bag containing 9.739 grams of heroin and 12.904 grams of cocaine immediately underneath Magwood, as well as $2,218 in cash in his front pockets. Officers also found two plastic baggies containing 24.385 grams of heroin and two plastic bags containing 31.748 grams of crack cocaine on Lacovey's person. Halton had $2,519 in cash on his person, and an additional $1,190 in cash was found under the driver's side visor. Beneath the front passenger seat where Magwood had been sitting, officers found a loaded .40 caliber Taurus semi-automatic pistol.

## II. PROCEDURAL HISTORY

On August 9, 2012, Halton and Magwood were indicted for conspiring to distribute 28 or more grams of crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), among other offenses. On September 19, 2012, the government filed an

information under 21 U.S.C. § 851 to establish that Halton had one prior conviction for a felony drug offense. Halton pleaded guilty to the conspiracy charge on September 24, 2012. In the written plea agreement, the government agreed not to file any additional § 851 informations against Halton, which protected him from exposure to a mandatory life sentence. In the accompanying Statement of Facts, Halton admitted being "aware that his co-conspirator [Magwood] carried a firearm during the course of the conspiracy and to further the objectives of the conspiracy. On at least one occasion, the defendant [Halton] had observed Magwood in possession of a firearm while they were packaging cocaine base for distribution." Statement of Facts, ¶ 11 [Dkt. No. 61].

On December 21, 2012, the Court sentenced Halton to 180 months of incarceration followed by eight years of supervised release, among other penalties. Halton did not appeal either his conviction or sentence, and he timely filed the instant motion on December 27, 2013.

### III. DISCUSSION

All of the claims made in Halton's Motion to Vacate derive from his dissatisfaction with his sentence. The Court will discuss his claims in turn.

A. <u>Standard of Review</u>

A motion to vacate under 28 U.S.C. § 2255 provides for collateral attack on a conviction or sentence when the

conviction or sentence was imposed in violation of the United States Constitution or laws, when the court lacked jurisdiction to impose the sentence, when the sentence was in excess of the maximum authorized by law, or when the conviction or sentence is otherwise subject to a collateral attack. See 28 U.S.C. § 2255(a). To prevail on a § 2255 motion, a movant bears the burden of proving his grounds for collateral relief by a preponderance of the evidence. See Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965).

Relief under § 2255 is designed to correct for fundamental constitutional, jurisdictional, or other errors, and it is therefore reserved for situations in which failing to grant relief would be "inconsistent with the rudimentary demands of fair procedure or constitute[] a complete miscarriage of justice." United States v. Vonn, 535 U.S. 55, 64 (2002) (quoting United States v. Timmreck, 441 U.S. 780, 783 (1979)). A § 2255 motion "may not do service for an appeal," and claims that have been waived are therefore procedurally defaulted unless the movant can show cause and actual prejudice. United States v. Frady, 456 U.S. 152, 165-67 (1982). An exception applies, however, when a defendant brings a claim of constitutionally ineffective assistance of counsel. See United States v. Gastiaburo, 16 F.3d 582, 590 (4th Cir. 1994).

B. <u>Ineffective Assistance of Counsel</u>

To sustain his § 2255 Motion based on ineffective assistance of counsel, Halton must satisfy the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), which requires a showing of both deficient performance by counsel and resulting prejudice to the defendant from that deficient performance. Because it "is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence" and because a wide range of legitimate defense strategies are possible in a given case, "scrutiny of counsel's performance must be highly deferential." <u>Id.</u> at 689. Even were counsel's performance deficient, to prevail, a movant must affirmatively "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.

Though styled as claims of ineffective assistance of counsel, Halton simply disagrees with the sentence imposed by the Court. He does not allege that he is innocent of the drug conspiracy, nor does he dispute the accuracy of his extensive criminal history. As discussed below, it was that extensive criminal history, and not anything his counsel did or failed to do, that resulted in the sentence he received. Moreover, his

6

sentence of 180 months of incarceration followed by eight years of supervised release varied extensively from the applicable guideline range given Halton's designation as a career offender. Accordingly, on this record, Halton cannot show that there has been a miscarriage of justice.

1. **Criminal History**

Halton's criminal history dates back nearly twenty years, starting with an arrest at the age of sixteen for possession of a controlled substance with intent to distribute. Presentence Investigation Report ("PSR"), ¶ 63 [Dkt. No. 94]. He spent five and a half months in a juvenile facility after which the charge was dismissed. Id. While still a juvenile, Halton was arrested three more times on drug charges, and he was convicted of grand larceny from a person, for which he served 90 days in prison. Id. ¶¶ 64-68. None of these convictions was used to compute Halton's criminal history.

As an adult, Halton's first felony drug conviction occurred on December 19, 1996, in Prince William County, Virginia, when he was eighteen years old. He was sentenced to five years of probation, which he violated and thereafter received a sentence of eighteen months of imprisonment. Id. ¶ 73. On March 20, 2000, this time in Prince George's County, Maryland, Halton pleaded guilty to conspiracy to distribute cocaine, for which he received a seven-year sentence with all but one year suspended. At the time of his arrest, Halton was using the alias "Michael

Carter." Id. ¶ 74. In 1996, Halton was convicted of three felonies — robbery, robbery with a weapon, and carrying a firearm — in Montgomery County, Maryland. He received a five-year sentence with all but eighteen months suspended, and he was placed on probation, which he violated a year later, incurring an additional eighteen months of incarceration. Id. ¶ 75. A second felony drug conviction occurred on February 25, 1999, when Halton, who had been arrested in Florida using the alias "Antwan R. Miller," was sentenced to nine months of incarceration. Id. ¶ 76. On June 9, 1999, Halton pleaded guilty to a felony escape charge when he left the Montgomery County Pre-Release Center without permission. He was initially sentenced to eighteen months, which was later suspended after he had already served six months. Id. ¶ 77. On December 10, 2002, Halton was arrested for possessing cocaine with intent to distribute. Id. ¶ 79. He pleaded guilty and was sentenced to ten years of incarceration to be served consecutive to all other sentences, with all but four years suspended and five years of supervised probation, which began on February 8, 2010. Id. The instant offense occurred while he was on probation from that conviction and a probation violation has therefore issued.

As a result of his criminal record, the Probation Officer determined that Halton qualified as a Career Offender under U.S.S.G. §4B1.1 because (1) he was over the age of eighteen when he committed the instant offense; (2) the instant offense was a

felony drug offense; and (3) he had more than two prior felony convictions for either a crime of violence (the robbery conviction) or controlled substances (his multiple felony drug convictions). Id. ¶¶ 103-05. Halton's designation as a career offender increased his offense level from 29 to 34, and likewise increased his criminal history from category IV to category VI, resulting in an advisory guideline range of 262 to 327 months of incarceration.

### 2. Counsel's Failure to Object to Enhancements

In his first claim, Halton alleges that his counsel was ineffective in failing to object to the two-level enhancement to the total offense level for possession of a firearm during the offense, as well as in failing to object to the filing of a § 851 information. Regarding the firearm enhancement, the record shows that Halton's counsel did file an objection to the PSR, in which he argued that the facts did not support the enhancement. The Probation Officer rejected that argument, as did the Court, based on numerous admissions in the Statement of Facts accompanying Halton's written plea agreement. Even if that enhancement was not adequately supported by the facts, however, Halton cannot point to any prejudice resulting from its application because he was found to be a career offender under U.S.S.G. §4B1.1. That finding automatically increased his total offense level to 34; the gun enhancement had no effect on the final number. Therefore, Halton suffered no prejudice from

9

inclusion of the enhancement in the calculation of his initial offense level.

For the same reason — that is, no indication of prejudice — Halton's argument as to his counsel's ineffectiveness regarding the § 851 information also fails. His extensive criminal history actually exposed him to the possibility of a mandatory life sentence had the government filed § 851 informations for more than one conviction. Under the terms of the written plea agreement, however, the government agreed to file a § 851 information for only one felony drug conviction. The effect of that filing was to increase the sentence Halton faced from a mandatory minimum of five years with a maximum of 40 years of imprisonment to a mandatory minimum of ten years to a maximum of life imprisonment, followed by eight years of supervised release. Because the government's ability to file a single § 851 information was clearly spelled out in the written plea agreement, and because Halton ultimately received a sentence well below the possible maximum sentence of life imprisonment, he cannot show that he suffered any prejudice from his counsel's purported failure to object.

  3. **Timeliness of Defendant's Past Convictions**

In his second claim, Halton relies on U.S.S.G. §4A1.2(e)(2) to argue that his counsel should have objected to the use of a February 2003 drug possession conviction in calculating his criminal history because the conviction was more than ten years

old.  He clearly does not understand how the guidelines work. Under U.S.S.G. §4A1.2(e)(1), "a prior sentence exceeding one year and a month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted." Halton was found guilty in April 2003 of two counts of felony distribution of cocaine and sentenced to 10 years of imprisonment on May 20, 2003; because six years of each sentence were suspended and the sentences ran consecutively, he received a total of eight years of imprisonment.  See Criminal Information and Notice Pursuant to 21 U.S.C. § 851 [Dkt. No. 50].  The guideline section which Halton cites as setting a ten-year limit only applies to sentences of less than one year and one month.  Because the 2003 sentences each exceeded one year and one month, those 2003 sentences were properly included in Halton's criminal history and properly used in determining whether he qualified as a career offender.  His counsel's failure to object was therefore not unreasonable.

    4. Career Offender Designation

    In his third claim, Halton argues that his counsel failed to point out that he lacks the required predicate offenses to qualify as a career offender under the ACCA.  Specifically, Halton argues that the 1997 convictions for two counts of robbery and one count of carrying a firearm should not have counted because he only pleaded guilty to carrying an illegal weapon, which he claims is a non-violent crime.  To the

contrary, the PSR shows that he was convicted of two counts of robbery as well as a firearm charge. The description of the offense describes how

> on June 3, 1997, three black males approached the two victims, who were standing outside a residence. One of the subjects pointed a small handgun at the victims and told them to give them all their money. The victims gave the subjects a book bag and a wallet. The subjects then fled in a vehicle. Officers received notice of another robbery that had occurred in the area, also committed by three black males. A partial license plate was obtained from that robbery. Given the similarities with the descriptions from the two robberies, officers stopped the vehicle and identified the occupants. The defendant, identified as Antwan Miller, had in his possession a gold ring that was taken from one of the victims during the earlier robbery. All three were charged with that robbery. A search of the vehicle revealed a loaded, small semi-automatic handgun under the right front passenger seat. Officers also found documents that belonged to the victim in the second robbery. Based on this evidence, the defendant was charged with two counts of Armed Robbery and Conspiracy to Commit Armed Robbery.
>
> On September 5, 1997, a Criminal Information was filed charging the defendant with the following counts: 1) Robbery, 2) Robbery With Weapon and 3) Wear/Carry Weapon. On November 3, 1997, the defendant pled guilty to the Criminal Information and on December 10, 1997, he was sentenced as outlined above.

PSR, ¶ 75.

In the Fourth Circuit, robbery from a person with the use of a firearm is considered a crime of violence. United States v. Smith, 359 F.3d 662, 665-66 (4th Cir. 2004) (addressing larceny from a person), United States v. Davis, 915 F.2d 132, 133 (4th Cir. 1990) (addressing unarmed bank robbery). Given

12

the nature of Halton's 1993 convictions, there can be no doubt that they are crimes of violence for purposes of the ACCA. Moreover, even assuming the 1993 robbery was not a predicate offense, Halton has more than three felony drug convictions as an adult — specifically, a 1996 conviction in Prince William County, Virginia, for which he was sentenced to five years of incarceration, with all but four months suspended; a 1999 conviction for felony possession of less than 28 grams of cocaine in Brevard County, Florida, for which he was sentenced to nine months of incarceration; a 2000 conviction for conspiracy to distribute cocaine in Prince George's County, Maryland, for which he was sentenced to seven years of incarceration; and the two 2003 felony convictions for cocaine distribution.  Clearly, Halton's record fully supported the career offender designation, and there was nothing his counsel could have done or argued to avoid that result.

### 5.  Failure to Allege the Enhancements

Although Halton does not reference specific case law to support his final claim, he appears to be arguing that <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), along with its progeny, require the career offender designation to be alleged in the indictment.  This argument fails as a matter of law because the Supreme Court has explicitly held that prior convictions used to enhance a sentence are not "treated as an element of the

offense." Almendarez-Torres v. United States, 523 U.S. 224, 247 (1998).

IV. CONCLUSION

None of Halton's claims establish that counsel's conduct was either unprofessional or caused him any prejudice. Moreover, the allegations that his sentence suffered from legal defects fail as a matter of law. For these reasons, the Motion to Vacate will be dismissed by an Order to issue with this Memorandum Opinion.

Entered this 19 day of May, 2014.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge